**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

                **Plaintiff,**           **:**

    **v.**                         **Case No. 2:21-cr-66
Judge Sarah D. Morrison**

**SAMUEL LAMONTE PIPPINS,**

                       **:**

              **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Samuel L. Pippins's Motion to Suppress (ECF No. 27), to which the Government responded (ECF No. 35), and Mr. Pippins replied (ECF No. 38). The Court held a hearing on Mr. Pippins's motion on December 5, 2022. For the reasons that follow the Court **GRANTS** Defendant's Motion to Suppress.

## I. FACTS

Having reviewed the briefs and attached exhibits, including body camera footage, and the evidence adduced at the hearing, the Court makes the following factual findings.

On November 14, 2022, Columbus Division of Police Officers James Poole and Haley Greening received information that Defendant Samuel L. Pippins did not have a valid driver's license and was driving a black Audi SUV near their location. (Hr'g.

Tr. [1], p. 8) While Officer Poole attempted to locate the vehicle, Officer Greening performed a record search and confirmed that Mr. Pippins did not have a valid driver's license. (*Id.*) When the vehicle matching the description was found, the officers initiated a traffic stop based on excessive window tint and the suspected license offense. (*Id.* at 9–10.) The lawfulness of the traffic stop is not at issue here. The license offense meant that the officers could either take Mr. Pippins into custody or allow him to leave with a citation and summons. (*Id.* pp. 10–12, 31.)

As they approached the vehicle, the tone set by the officers was casual and relaxed. Officer Greening (who recognized Mr. Pippins) greeted him with, "How are you doing, Mr. Pippins?" and Officer Poole smiled and asked him where he worked. (Officer Greening Bodycam Footage, at 1:10–30.) Mr. Pippins responded, "I'm good" and informed the officers he was heading into work at Mercy Motors. (*Id.*) Officer Greening then asked if there was anything in the vehicle "because you know you don't [have] no driver's license," and Mr. Pippins said, "I know, I know. I am just trying to get from home to work. That's all I do—work, home, home, work." (*Id.*) Officer Poole laughed, and Officer Greening replied, "Alright, we are going to make sure there is nothing in the vehicle, then we'll cut you loose." (*Id.*)

Mr. Pippins complied by opening the door to exit the vehicle so that the officers could search it. (Officer Poole Bodycam Footage, at 1:30–45.) However, before he was

---

[1] All citations to "Hr'g. Tr." are to the "rough" transcript prepared for the Court's use in rendering this Opinion and Order.

able to step out of the vehicle of his own accord, Officer Poole grasped Mr. Pippins's arm, guided him out of the vehicle, placed his hands behind his back, and started patting him down. (*Id.*) Although Mr. Pippins was obviously surprised by this (he exclaimed "oh shit" when Officer Poole grabbed his arm), he remained compliant throughout the search and even told Officer Poole that he had marijuana in the front pocket of his jeans. (*Id.* at 2:10.)

After completing the pat-down search, Officer Poole placed Mr. Pippins in the back of the police cruiser but chose not to handcuff him "to show some rapport and [be] courteous" while he and Officer Greening "figured out what we were going to do with the situation." (Hr'g. Tr., pp. 47–48.) By this time, other CPD officers had arrived and the scene. Though it is unclear whether the other officers were aware that Officer Poole had discovered marijuana during the pat-down search, they began searching the vehicle for contraband. When Mr. Pippins was secured in the cruiser, Officer Poole joined Officer Greening and the other officers in searching the vehicle.

A few minutes into the vehicle search, Mr. Pippins got Officer Greening's attention by knocking on the window of the police cruiser and asked her if he would be taken to jail. (Officer Greening Bodycam Footage, at 8:40–50.) She responded that "as long there is nothing in the car and you ain't got no warrants, we're not taking you to jail." (*Id.*) She then returned to the vehicle and resumed searching. At that time, approximately eight minutes after Pippins had been put in the cruiser, an unnamed CPD Officer asked Officer Greening if they were going to "write" Mr. Pippins—referring to whether he would receive a citation or be taken into custody.

3

(Hr'g. Tr., 11–12, 31.) Officer Greening directed the question to Officer Poole who answered, "I don't know yet." (Officer Greening Bodycam Footage, at 10:45–55.)

Officer Poole then located a Glock 19 firearm, an extended magazine with 18 rounds of ammunition, and a small quantity of white powdered substance (which was later identified as fentanyl) behind a loose panel in the Audi's rear console. (Officer Poole Bodycam Footage at 11:20.) Immediately after finding the cache, Officer Poole returned to Mr. Pippins in the police cruiser and placed him in handcuffs. (*Id.* at 11:45.) According to Officer Poole, this was an "identifier" that the decision was made to take Mr. Pippins into custody. (Hr'g. Tr., 47–48.)

Based on the firearm found in vehicle and his prior felony conviction, Mr. Pippins was charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922g. (Criminal Compl., ECF No. 1.) He now seeks to suppress all evidence found during the warrantless searches of his person and the vehicle he was driving.

## II.    ANALYSIS

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A warrantless search is presumptively unreasonable unless a warrant exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967).

Mr. Pippins argues that the warrantless pat-down search and vehicle search[2]

---

[2] Although Mr. Pippins was not the legal owner of the vehicle, it is undisputed that he has standing to challenge its search under the Fourth Amendment based on

were not justified by a warrant exception and, therefore, the evidence obtained from each search must be excluded at trial. The Government argues that the pat-down search was justified by the search incident to lawful arrest warrant exception. Regarding the vehicle search, it argues that the marijuana discovered during the pat-down search created probable cause to search the vehicle under the automobile exception. At the evidentiary hearing, the Government acknowledged that if the initial pat-down search was unlawful, then all evidence during that search and the vehicle search is fruit of the poisonous tree. (Hr'g. Tr., p. 53.) Finally, the Government argues that even if the searches were unlawful, the exclusion of evidence is not an appropriate remedy.

### A. The pat-down search of Mr. Pippins was not justified as a search incident to lawful arrest.

The search incident to lawful arrest warrant exception permits a complete search of an arrestee's person in order to ensure officer safety and prevent the destruction of evidence. *Riley v. California*, 573 U.S. 373, 383 (2014). In *Rawlings v. Kentucky*, the Supreme Court held that the search incident to lawful arrest exception permits searches that occur before an individual is placed under arrest if (1) the

---

his reasonable expectation of privacy in the vehicle. *See California v. Ciraolo*, 476 U.S. 207, 211 (1986) ("The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy."); *see also United States v. Robinson*, No. CRIM.A. 07-74-DLB, 2013 WL 1878915, at *8 (E.D. Ky. May 3, 2013), *aff'd*, 625 F. App'x 721 (6th Cir. 2015) ("It is well-established that a driver of a borrowed vehicle may establish a reasonable expectation of privacy in a vehicle even though that driver is not the owner of the vehicle.") (quoting *Johnson v. United States*, 604 F.3d 1016, 1020 (7th Cir.2010)).

fruits of the search are not necessary to sustain probable cause for the arrest and (2)

"the formal arrest followed quickly on the heels of the challenged search." 448 U.S.

98, 110–11 n. 6 (1980). Nevertheless, it is the <u>fact</u> of the arrest, not the existence of

probable cause to arrest, that justifies a search under this exception. *United States v.*

*Smith*, 549 F.3d 355, 361 (6th Cir. 2008) (citing *United States v. Robinson,* 414 U.S.

218, 235 (1973)); *Bennett v. City of Eastpointe*, 410 F.3d 810, 824 (6th Cir. 2005). And

because there is no "search incident to citation" warrant exception, *Knowles v. Iowa*,

525 U.S. 113, 115 (1998), the Sixth Circuit has recognized that a strict application of

*Rawlings* to a routine traffic stop creates a risk of abuse by law enforcement, who

often have the discretion to either issue a citation or take an individual into custody:

> Arguably, under the literal language of *Rawlings*, an officer could search a suspect's vehicle during a routine traffic stop, arrest the suspect after finding contraband, and then validate the search by testifying that he arrested the suspect for the misdemeanor traffic offense. We do not believe that to be the holding of *Rawlings*, nor the law of the Fourth Amendment. The reasonableness of a search depends on what the officers actually did, not what they had the authority to do.

*United States v. Williams*, 170 F. App'x 399, 404–05 (6th Cir. 2006), *abrogated on*

*other grounds by Arizona v. Gant*, 556 U.S. 332 (2009). To be sure, a warrantless

search may not be validated based on such circular reasoning.

Instead, for a warrantless search to be justified incident to arrest, the

Government must show (1) that there was probable cause to arrest, (2) that an arrest

preceded or quickly followed the search, and (3) that neither the arrest nor probable

cause to arrest were contingent on the fruits of the search incident to arrest.

Here, the Government argues that the initial pat-down search of Mr. Pippins was justified as search incident to his lawful arrest for driving without a license. Mr. Pippins responds that the Government did not have probable cause to arrest him for that offense. And, even if they did, he was not under arrest before the search and no decision was made to arrest him until after officers discovered the firearm during the subsequent vehicle search.

### 1. The officers had probable cause to arrest Mr. Pippins for operating a vehicle without a license.

"An officer has probable cause when the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (citations omitted); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 321 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Before the traffic stop, Officers Greening and Poole were informed by another CPD Officer that Mr. Pippins had been observed driving a dark Audi SUV and that he did not have a valid license. Officers Greening and Poole located the vehicle and began following it. After confirming that Mr. Pippins did not have a valid driver's license, they initiated a traffic stop. During the traffic stop and before the pat-down search, Mr. Pippins confirmed his identity and that he was operating the vehicle

without a license. Under these circumstances, the officers had probable cause to arrest Mr. Pippins.[3]

> **2.  Mr. Pippins was not under arrest until after the pat-down search and would not have been arrested but for the fruits of that search.**

"There is no bright-line test for determining when an investigatory stop crosses the line and becomes an arrest." *Williams*, at 402. The general rule applied in the Fourth Amendment context is whether a reasonable person in the defendant's shoes would not feel free to leave. *United States v. Saari*, 272 F.3d 804, 808 (6th Cir. 2001) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Circumstances that would indicate to a reasonable person that they are under arrest may include whether they have been handcuffed, read their *Miranda* rights, placed in back of a squad car, or taken to a secondary location by law enforcement. *See Williams*, at 403 (holding that an individual who was read *Miranda* rights, handcuffed, detained in the back of a police car, and interrogated was under arrest). But detention in the back of a police car, without more, does not amount to an arrest.

---

[3] Mr. Pippins argues that his arrest was not supported by probable cause because police did not confirm whether his specific license violation was an arrestable offense or a non-arrestable minor misdemeanor under Ohio law. (Reply, PAGEID # 127.) This has no bearing on the constitutionality of his arrest. The Supreme Court has consistently held that an arrest supported by probable cause that *any* crime occurred (even a very minor offense) is lawful under the Fourth Amendment, even if the same arrest is unlawful under state law. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) (holding that a search incident to arrest was constitutional as long as it was supported by probable cause, even if state law required officers to issue a citation instead of a custodial arrest).

*See Bennett,* 410 F.3d at 837–38 (collecting cases). In addition, "whether an officer explicitly tells the suspect that he or she is not under arrest is an important part of the analysis of whether a suspect is in custody." *United States v. Tummins*, 517 F. App'x 342, 344 (6th Cir. 2013) (finding that no arrest occurred because an individual was told by police that he was not under arrest).

The objective evidence demonstrates that Mr. Pippins was not under arrest until after police found the firearm in the vehicle. Before the pat-down search, Officer Greening told Mr. Pippins that that he would be free to go if they searched the vehicle and found nothing.  Even when Officer Poole found marijuana on Mr. Pippins, they gave no indication that he was under arrest. Rather, Officer Poole placed Mr. Pippins in the back of the police cruiser unhandcuffed. Officer Poole testified that it was standard procedure to detain someone in the back of a cruiser during a search. (Hr'g. Tr., p. 50.) Any indication to Mr. Pippins that he was under arrest when he was placed in the cruiser was neutralized by Officer Greening repeating that he would be free to go if he did not have any warrants and if nothing was found in the vehicle. As Officer Poole testified at the evidentiary hearing, whether Mr. Pippins would receive a citation or be brought into custody "was up in the air" until the firearm was discovered. (Hr'g. Tr., p. 11–12.) Only then did Officer Poole put Mr. Pippins in handcuffs and place him under arrest.

Thus, regardless of whether police had the authority to arrest Mr. Pippins for his license violation before he was searched, it is clear that he was not searched incident to an arrest for that offense. In fact, Officer Greening expressly told Mr.

9

Pippins that his arrest was contingent on their search or any outstanding warrant. Officers cannot validate a warrantless search based on an arrest that would not have occurred but for the fruits of that same search. *Williams*, at 404–05.

Because no warrant exception applies, the warrantless pat-down search of Mr. Pippins was unreasonable and in violation of his Fourth Amendment rights.

**B.    The vehicle search was not justified under the automobile exception.**

The automobile exception permits warrantless vehicle searches regardless of whether the driver is under arrest as long as there is probable cause to believe that it contains contraband or evidence of a crime. *See United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). Probable cause exists when there is a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause is determined based on the objective facts known to police at the time of the search. *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007). *See also United States v. Coleman*, 458 F.3d 453, 458 (6th Cir. 2006) (discovery of marijuana on a defendant creates probable cause that his vehicle contains further contraband).

The marijuana found on Mr. Pippins during the unlawful pat-down search cannot be used to establish probable cause without tainting the vehicle search. Without the marijuana, the remaining information known to the officers at the time of the search was insufficient to create probable cause that the vehicle contained

contraband or evidence of a crime. Thus, the vehicle search was not justified under the automobile exception.

Because no warrant exception applies, the warrantless vehicle search was unreasonable and in violation of Mr. Pippins's Fourth Amendment rights.

### C. All direct and derivative evidence obtained as a result of the unlawful searches is excluded from trial.

Although the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," *Arizona v. Evans,* 514 U.S. 1, 10 (1995), the exclusionary rule forbids the use of improperly obtained evidence at trial and safeguards Fourth Amendment rights through its deterrent effect. *Herring v. United States*, 555 U.S. 135, 139 (2009). Evidence that is subject to exclusion includes, "the primary evidence obtained as a direct result of an illegal search or seizure" and the "evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237–38 (2016).

Even so, exclusion of evidence is a drastic remedy and is only appropriate where the deterrent effect of suppression outweighs the costs—principally, "letting guilty and possibly dangerous defendants go free." *Herring*, at 139. The deterrent value of exclusion outweighs this cost where the violation results from a systemic error or the reckless disregard of constitutional requirements. In such instances, courts are generally willing to "bear the cost of letting the criminal 'go free because the constable has blundered.'" *Id.* at 147–48 (quoting *People v. Defore*, 242 N.Y. 13, 150 N.E. 585, 587 (1926) (Cardozo, J.)).

11

Here, all evidence discovered during the traffic stop—including the marijuana, firearm, and fentanyl—derived from illegal searches. Suppression of the evidence is appropriate given the officers' reckless disregard for constitutional requirements. Although there were numerous tools at the officers' disposal had they wished to conduct a constitutional investigative stop, they took none. Instead, the officers made clear that they were going to search the vehicle from the start of the traffic stop— before they decided to arrest Mr. Pippins. What evidence the officers did uncover was obtained through or as a result of the unlawful pat-down search of Mr. Pippins. Mr. Pippins posed no threat, so this was not an instance where police were required to make a split-second decision to search for their safety or the safety of others. Given that the officers told Mr. Pippins that he would be free to go before the pat-down search, they knew or reasonably should have known that the warrantless search ran afoul of the Fourth Amendment.

Accordingly, Mr. Pippins's motion to suppress evidence obtained in violation of the Fourth Amendment is **GRANTED**.

## III.   CONCLUSION

For the reasons stated herein, Defendant's motion to suppress evidence obtained in violation of the Fourth Amendment is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

12